UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK A. SAUVIE,

                         Plaintiff,

v.                                                      7:16-CV-1302
                                                                   (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

CONBOY, MCKAY LAW FIRM                LAWRENCE HASSELER, ESQ.
  Counsel for Plaintiff
307 State St.
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.            DANIELLA CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 3, 20.)

      Currently before the Court, in this Social Security action filed by Mark A. Sauvie ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 8, 17.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1972. (T. 206.) He completed high school. (T. 314.) Generally, Plaintiff's alleged disability consists of depression, disc disease, anxiety, ulcers, and high blood pressure. (T. 313.) His alleged disability onset date is September 10, 2012. (T. 168.) His date last insured is December 31, 2017. (T. 309.) He previously worked as a cashier and cook. (T. 314.)

### B.  Procedural History

On June 6, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 191.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 3, 2015, Plaintiff appeared before the ALJ, F. Patrick Flanagan. (T. 160-190.) On April 6, 2015, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 79-109.) On September 27, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.  The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 85-104.) First, the ALJ found that Plaintiff met the insured

status requirements through December 31, 2017 and Plaintiff had not engaged in substantial gainful activity since September 10, 2012. (T. 85.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), status post right occipital lobe cerebrovascular accident ("CVA") with partial left hemianopsia, obesity, depression, and anxiety. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 87.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) with additional limitations. Specifically, [Plaintiff] can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently; can stand or walk for 6 hours total in an 8-hour workday; can sit for 6 hours total in an 8-hour workday; can occasionally climb, stoop, or operate[] foot controls; should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extreme heat, and extreme cold; should avoid working at heights or around dangerous machinery; is capable of understanding, remembering, and carrying out simple tasks; should not be exposed to more than occasional changes in routine work setting or occasional decision-making; requires only occasional, superficial contact with supervisors, co-workers, or the public; and can do low stress work defined as no fast-pace production rate tasks.

(T. 90.)[1]  Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 102-104.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the AC and the ALJ failed to properly evaluate the opinions of Plaintiff's primary treating physicians. (Dkt. No. 8 at 15-19 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ failed to support his RFC determination with substantial evidence. (*Id.* at 19-21.)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ properly evaluated Plaintiff's RFC. (Dkt. No. 17 at 7-19 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

5

sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Weighing of the Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).

In assessing the medical opinion evidence in the record, the ALJ must consider the following factors: the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a

---

[2] Effective March 27, 2017, many of the Regulations and SSRs cited herein have been amended. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's

7

treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-130).

Plaintiff contends that the ALJ erred in his assessment of the medical opinion evidence in the record. (Dkt. No. 8 at 15-19 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues: the ALJ erred in affording treating physician, Juan-Diego Harris, M.D.'s opinion "little weight" because substantial evidence in the record supported the doctor's opinion; the ALJ committed legal error in failing to afford treating physician Mariam Asar, M.D.'s opinion a specific weight; and the ALJ committed legal error in affording greater weight to non-examining State agency medical consultant T. Bruni, Ph.D. than treating mental health providers. (*Id.*)

First, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Although Plaintiff cites to evidence in the record which he contends supported Dr. Harris's

opinion, Plaintiff ultimately fails to prove that no reasonable fact finder could have reached the ALJ's conclusion.

In October of 2013, Dr. Harris completed a medical source statement. (T. 603-608.) Therein he opined that Plaintiff could occasionally and frequently lift up to ten pounds; could stand and/or walk less than two hours in an eight hour workday; sit less than six hours in an eight hour workday; and he was limited in pushing and pulling with his lower extremities. (T. 603-604.) He opined that Plaintiff should never kneel, crouch, crawl or stoop; and could occasionally climb and balance. (T. 604.) Dr. Harris indicated that Plaintiff was limited in his ability to reach and unlimited in his ability to handle, finger, and feel. (T. 605.) He further opined Plaintiff was limited in his ability to see. (*Id.*)

In treatment notations dated February 18, 2014, Dr. Harris provided functional limitations similar to those he outlined in his medical source statement. (T. 625.) He also indicated that Plaintiff must alternate sitting and standing "on a regular basis." (*Id.*) In September of 2014, Dr. Harris completed another medical source statement. (T. 669-674.) Dr. Harris provided the same exertional and non-exertional limitations as in his October 2013 statement. (*Id.*) However, in September of 2014, Dr. Harris opined Plaintiff had no limitations in his ability to see. (T. 671.)

The ALJ afforded Dr. Harris's opinions "little weight." (T. 96.) The ALJ reasoned that the opinions were not well supported by objective medical evidence. (*Id.*) In support of his determination the ALJ cited numerous examinations and notations in the record. The ALJ outlined the physical exam performed by consultative examiner Nader Wassef, M.D. and Plaintiff's testimony regarding activities of daily living which the ALJ

9

concluded would require greater postural and manipulative functioning than Dr. Harris opined Plaintiff could perform.  (*Id.*)

Indeed, Dr. Wassef noted on examination that Plaintiff could walk on his heels and toes; could fully squat; needed no help changing for the exam or getting on and off the exam table; and was able to rise from a chair.  (T. 560.)  Dr. Wassef also noted Plaintiff had full strength in his upper and lower extremities; no muscle atrophy; intact hand and finger dexterity; and full grip strength.  (T. 561.)  On examination Plaintiff had tenderness in his lumbar spine, but full range of motion.  (T. 560.)  Plaintiff had full range of motion in his cervical spine and all upper and lower extremities.  (*Id.*)  As indicated by the ALJ, Dr. Wassef's contemporary findings were not consistent with Dr. Harris's assessment that Plaintiff could not perform sedentary work or various postural activities.  The ALJ also noted that Plaintiff denied side-effects from medications which did not support Dr. Harris's statement that Plaintiff was unable to function at a productive level due to medication side-effects.  (T. 96.)  Therefore, the ALJ properly concluded Dr. Harris's opinions were inconsistent with the record and the ALJ cited to substantial evidence in the record to support his determination.

Second, Plaintiff argues the ALJ failed to assign Dr. Asar's opinion weight and that Dr. Asar's opinion was supported by consultative examiner, Brett Hartman, Psy.D.'s opinion.  (Dkt. No. 8 at 18 [Pl.'s Mem. of Law].)  Where an ALJ's reasoning can be "discern[ed] with ease" the ALJ did not err in failing to afford a medical opinion specific weight.  *Curtis v. Colvin*, 11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013); *see Camille v. Colvin*, 652 F.App'x 25, 28 (2d Cir. 2016) ("Although the ALJ did not describe in detail her rationale [for affording weight to an opinion], we can infer from the

10

decision that she attributed great weight to the opinion because she found it most consistent with the record as a whole.").

Here, although the ALJ did not afford Dr. Asar's opinion specific weight, the ALJ stated that he did not afford her opinion "controlling weight" because the limitations imposed were "not supported by the few chronically positive clinical findings on mental status exams . . . and [were] inconsistent with substantial evidence, including [Plaintiff's] daily activities." (T. 100.) The ALJ also stated that Dr. Asar's opinion could not be afforded controlling weight because it was inconsistent with objective medical evidence that supported an overall positive response to treatment, abstinence from drugs and alcohol, and medication management of his condition without the need for more intensive treatment. (T. 101.) The ALJ supported his determination with evidence in the record concerning Plaintiff's treatment and testimony regarding activities of daily living. (T. 100-101.) The ALJ also stated in his thorough decision that he relied primarily on the opinions of Drs. Bruni and Hartman in formulating his mental RFC determination. (T. 101.) Therefore, although the ALJ did not afford Dr. Asar's opinion a specific weight, he committed no error because the ALJ's decision made clear that he afforded the opinion less than controlling weight. It is further clear from the ALJ's decision that he relied on the opinions of Drs. Bruni and Hartman, as well as Plaintiff's treatment notations and activities of daily living, in formulating his mental RFC.

Plaintiff further asserts that the ALJ erred in his assessment of Dr. Asar's opinion because Dr. Hartman's opinion "clearly supports" her assessment. (Dkt. No. 8 at 18 [Pl.'s Mem. of Law].) In February 2014, Dr. Asar opined Plaintiff had "marked" or "extreme" limitations in all areas of mental functioning. (T. 610-612.) The form

11

completed by Dr. Asar defined "marked" as a "serious limitation . . . there is substantial loss in the ability to effectively function." (T. 610.) The form defined "extreme" as a "major limitation . . . there is no useful ability to function." (*Id.*) In January of 2015, Dr. Asar opined that Plaintiff had "marked" limitations in all areas of mental functioning. (T. 699-700.) Dr. Hartman opined Plaintiff could follow and understand simple directions, and perform simple tasks. (T. 575.) He further opined Plaintiff had a "mild difficulty": maintaining attention and concentration; learning new tasks; performing complex tasks independently; and making appropriate decisions. (*Id.*) He opined Plaintiff had "moderate problems": maintaining a regular schedule; relating adequately with others; and dealing appropriately with the normal stressors of life. (*Id.*)

Whereas Dr. Asar essentially opined that Plaintiff was incapable of performing the basic mental demands of work, Dr. Hartman's opinion supported the determination that Plaintiff could perform those demands. Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6). Further, moderate limitations in mental functioning do not necessarily preclude the ability to perform basic work activities. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015)

("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment."). Although the ALJ afforded Dr. Hartman's opinion "some weight," his opinion was consistent with the ALJ's mental RFC determination. Therefore, contrary to Plaintiff's contention, the ALJ properly assessed Dr. Asar's opinion and ultimately, Dr. Hartman's opinion supported the ALJ's mental RFC determination.

Plaintiff asserts, without citation to the record, that the ALJ erred in his conclusion that Plaintiff's treatment indicated he had no problems socializing. (Dkt. No. 8 at 18 [Pl.'s Mem. of Law].) Plaintiff misstates the ALJ's conclusion and the record, and essentially asks this court to reweigh the evidence. Here, contrary to Plaintiff's assertion, the ALJ did not determine that Plaintiff had "no problems" socializing. The ALJ determined that "the record does not support more than moderate difficulties maintaining social functioning." (T. 100.) Indeed, the RFC accounted for any social limitations by limiting Plaintiff to "superficial contact with supervisors, co-workers, or the public." (T. 90.) A review of the record indicates that the ALJ did not misstate Plaintiff's treatment; and further, the ALJ relied on other evidence in the record to support this determination, such as Plaintiff's testimony regarding his activities and observation by medical professionals. (T. 100.)

Third, Plaintiff asserts that the ALJ committed legal error in affording more weight to non-examining State agency consultant, Dr. Bruni than treating provider, Dr. Asar.

13

(Dkt. No. 8 at 18-19 [Pl.'s Mem. of Law].)  However, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); 416.912(b)(6), 416.913(c), 416.927(e).  The Second Circuit has consistently recognized that opinions from consultative examiners, including non-examining consultants, may constitute substantial evidence in support of a RFC and may be afforded more weight than a plaintiff's treating source.  *See Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016) (ALJ properly afforded more weight to non-treating source than treating source because the non-treating source's opinion was consistent with the objective medical evidence in the record); *Monette v. Colvin,* 654 F. App'x 516, 518 (2d Cir. 2016) ("The greater weight accorded by the ALJ to the opinion of the consultative psychologist is also consistent with the record at large and the applicable regulations."); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence.") (internal citation omitted).  Indeed, the ALJ specifically outlined his reasoning for affording more weight to the non-examining State agency medical consultant and one-time examining psychologist than Plaintiff's treating providers.  (T. 101.)  Therefore the ALJ did not commit *per se* remandable error in affording more weight to the opinion of a non-examining consultative examiner than to the opinion of a treating source.

In formulating his mental RFC determination the ALJ relied primarily on the findings of Dr. Bruni.  (T. 98.)  Also, as stated herein, Dr. Hartman's opinion supported

the mental RFC.  The ALJ reasoned that Dr. Bruni's opinion was entitled to significant weight because it was "generally supported by the objective medical evidence from various treating and examining sources," including evidence received after Dr. Bruni conducted his review.  (*Id.*)  Dr. Bruni reviewed Plaintiff's record on September 24, 2013.  (T. 198.)  He opined Plaintiff had a severe psychiatric impairment that resulted in significant functional limitations; however, Plaintiff could still perform the basic mental demands of work.  (T. 203.)  Dr. Bruni opined Plaintiff could understand and remember simple instructions and procedures; could sustain a normal workday and workweek and maintain consistent pace; had "some difficulty" interacting with co-workers and supervisors, but was able to relate and respond in a socially adequate manner; and could adapt to changes in a routine work setting and could use appropriate judgment to make work-related decisions.  (*Id.*)  The ALJ outlined in great detail evidence in the record to support his determination to afford significant weight to Dr. Bruni's opinion.  (T. 98-101.)  The ALJ relied on mental status examinations by treating and examining sources which generally showed few positive findings.  (*Id.*)  Therefore, the ALJ did not commit legal error in affording more weight to a non-examining source than a treating source.  Further, the ALJ's determination was supported by substantial evidence in the record.

      The ALJ did not err in weighing the medical opinion evidence in the record and the ALJ's weight determinations are upheld.  Further, because the ALJ did not err in his assessment of the medical opinion evidence in the record, and the ALJ provided a thorough analysis of all of the medical and non-medical evidence and provided ample

15

reasoning to support his RFC determination, the RFC determination was proper and supported by substantial evidence in the record.

Plaintiff appears to argue that the ALJ's RFC determination was faulty because the ALJ did not perform a function by function analysis. (Dkt. No. 8 at 20 [Pl.'s Mem. of Law].) However, the Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a *per se* error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir. 2013). In formulating his RFC determination the ALJ thoroughly outlined the medical record, including opinions from treating sources and non-treating sources. (T. 90-101.) Plaintiff then essentially reiterates his previous argument that had the ALJ properly weighed treating source opinions a finding of disabled would be warranted. (Dkt. No. 8 at 20-21 [Pl.'s Mem. of Law].) For the reasons already stated herein, the ALJ's weighing of the medical opinion evidence was proper.

### B. AC Determination

Plaintiff argues that the AC erred in its determination denying Plaintiff's request for review. (Dkt. No. 8 at 15-16 [Pl.'s Mem. of Law].) On June 4, 2015, Plaintiff requested review and submitted additional medical evidence to the AC. (T. 378-382.) Essentially, the AC received two batches of evidence. One batch of evidence was included in the administrative record (T. 702-819); and the AC ultimately determined the evidence did not provide a basis for changing the ALJ's decision (T. 2). The AC determined the second batch of evidence was "about a later time"; and was not made part of the administrative record. (T. 2.)

16

Regarding the first batch of evidence, the AC stated that they considered this evidence and concluded that the ALJ's "actions, findings, or conclusions" were not contrary to the weight of the evidence in the record. (T. 2.) This additional evidence submitted by Plaintiff was included in the administrative transcript. (T. 702-819.)

The AC then acknowledged that it received medical records from Canton Potsdam Hospital dated August 10, 2015, Kejian Tang, M.D. dated April 21, 2015, and Magendra Thakur dated May 6, 2015. (T. 2.) The AC concluded that these records were about a later time and did not affect the decision about whether Plaintiff was disabled beginning on or before April 6, 2015. (*Id.*) Therefore, the above listed records were not included in the administrative transcript. (*Id.*) Plaintiff did not submit the additional evidence from 2015 to this Court.[3]

Plaintiff argues that the AC erred in its review of the medical records received subsequent to the ALJ's April 2015 decision. (Dkt. No. 8 at 15-16 [Pl.'s Mem. of Law].) Plaintiff asserts that once the evidence was "[made] part of the Record, the [AC] was obligated to review the evidence and make a factual determination as to whether the evidence was relevant to an evaluation of Plaintiff's functional limitations prior to April 6, 2015." (*Id.*) Of note, Plaintiff does not argue that the AC erred in its determination that this evidence was indeed not related to the relevant period. Further, Plaintiff does not argue that the addition evidence received, and included in the record, would have altered the ALJ's determination.

---

[3] When a plaintiff wishes to support an appeal with new evidence, such evidence must be accompanied by a legal memorandum setting forth an argument for the acceptance of the new evidence based upon the three-part showing required by the regulations. N.D.N.Y. General Order 18 at 3.

Plaintiff argument is without merit.  First, Plaintiff fails to provide any legal authority to support his assertion that the AC was obligated to make a factual determination regarding evidence dated after the ALJ's hearing decision.  (Dkt. No. 8 at 15 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the AC was obligated to review the evidence because it was made part of the record.  (*Id.*)  However, contrary to Plaintiff's assertion, the evidence was not made part of the record and Plaintiff did not submit the evidence to this Court.

If the AC determines that additional evidence does not relate to the period on or before the date of the ALJ's hearing decision, the AC must explain why it did not accept the additional evidence and advise Plaintiff of his right to file a new application.  20 C.F.R. §§ 404.970(c), 416.1470(c).  Here, the AC's decision indicated that they received all the additional evidence Plaintiff submitted and provided an explanation of their treatment of the evidence.  (T. 2.)  The AC proceeded to advise Plaintiff of his right to file a new application.  (*Id.*)  Therefore, the AC complied with the requirements of 20 C.F.R. §§ 404.970(c) and 416.1470(c).

Overall, the ALJ properly weighed the medical opinion evidence in the record and his RFC determination was proper and supported by substantial evidence.  Further, Plaintiff's argument that the AC erred in their review is without merit.  Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is

    **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Date:  February 7, 2018

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　William B. Mitchell Carter
　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge